## GORDON *et al. v.* MAGONE, Collector.

*(Circuit Court, S. D. New York.* December 5, 1889.)

1. CUSTOMS DUTIES—APPRAISEMENT—FOREIGN MONEY—SHANGHAI TAELS.
   Small masses of silver, not always uniform in size, nor regular in shape, but conforming generally to an oval shape like that of a hat turned upside down, or of a Chinese shoe, marked by an officer selected by the *consensus* of Chinese bankers with characters indicating the fineness, and the number of taels, or the weight of the silver therein, and circulated in China as the only money of account, are coins of China; and the value of a tael of the same is a proper subject of annual estimation by the director of the mint, and of proclamation on the 1st day of January by the secretary of the treasury, within the meaning of section 3564, Rev. St. U. S.

2. SAME—PROCLAMATION AS TO VALUE.
   If the value of a foreign coin be estimated by the director of the mint upon the basis used by him in estimating the values of other foreign coins of the same metal, proclaimed by the secretary of the treasury on the 1st day of January of any year, and be proclaimed by the secretary of the treasury during a subsequent month of the same year, the director, in the absence of any proof to the contrary, will be presumed to have performed his entire duty, and to have made such estimation of the value of such foreign coin at the time required by said section 3564, and the proclamation, during such subsequent month, by the secretary of the treasury of its value so estimated, is a compliance by him with the requirements of that section.

At Law. Action to recover back duties.

The plaintiffs made one importation August 28, and another September 21, 1886, into the port of New York, from Shanghai, China, of certain dressed furs, which were invoiced in Shanghai taels. The defendant, as collector of customs at that port, pursuant to the decision of the treasury department, (S. 6839,) made April 3, 1885, converted the taels at the rate of $1.175 each into money of account of the United States; and on August 28 and September 22, 1886, respectively, the duties in the case of these importations, as estimated by the proper officers, at the legal rate thereof, on the amounts of such money so obtained, were paid by the plaintiffs to the defendant as such collector. On January 31 and February 1, 1887, respectively, the duties in the case of these importations were liquidated by the proper officers at the same amounts as the estimated amounts. Thereafter, within the time required by law, the plaintiffs protested against the exaction of duties on these amounts, claiming that duty should have been exacted on amounts so obtained by converting these taels into money of account of the United States, at the rate of $1.1094 each; and, having made appeals

which were decided adversely to them, brought this suit to recover the duties exacted, on the difference between the amounts of money of account of the United States obtained by converting into the same these taels at the rate of $1.175, and the amounts of such money to be obtained by converting into the same these taels at the rate of 1.1094 each. Section 3564, Rev. St. U. S., provides that "the value of foreign coin, as expressed in the money of account of the United States, shall be that of the pure metal of such coin of standard value; and the value of the standard coins in circulation of the various nations of the world shall be estimated annually by the director of the mint, and be proclaimed on the 1st day of January by the secretary of the treasury."

On the trial, the plaintiffs, to establish that the value of these taels was as claimed by them in their protest, put in evidence a treasury circular which was issued between the dates of the importations in suit and the dates of the liquidation of the duties paid thereon, and of which the following is a copy:

"CIRCULAR.

"*Value of the Shanghai Tael.*

"1886. Department No. 144. Division of Customs.

"TREASURY DEPARTMENT, OFFICE OF THE SECRETARY.

"WASHINGTON, D. C., October 16, 1886.

"*To Collector of Customs and Others:* Under the decision dated April 3, 1885, (Synopsis, 6839,) the value of the Shanghai tael for custom-house purposes was fixed, by the advice of the director of the mint, at $1.17 5-10. The director of the mint now reports that, upon the basis used in estimating the value of foreign silver coins specified in the circular of January 1, 1886, the value of the Shanghai tael would be $1.1094. This value ($1.1094) should be adopted, therefore, by custom-house officers for the tael mentioned, in cases of importations or withdrawals made after the date of these instructions, and the value heretofore attached to other Chinese taels will be reduced in the same proportion. C. S. FAIRCHILD, Acting Secretary."

It appeared from the testimony of the defendant's witnesses that the Shanghai tael was 566 grains, or about an ounce and one-third, of silver; that fifty of these taels was a large lump, and one tael was a small lump, of silver; that each of these lumps of silver was oval shaped,—shaped somewhat like a hat turned upside down, or like a Chinese shoe, and called "sycee;" that these lumps of silver had stamped or written thereon, or written on a piece of paper pasted thereon, marks or characters indicating the fineness of the silver, and the weight or number of taels thereof; that these marks or characters were so put on by what was called the Koom Koo office, which was appointed by the consent and sanction of the Chinese bankers, and possibly of the Chinese government, though it was not a regular government office; that, as witnesses understood, any private person could melt up a lump of silver, and have such marks or characters put on it by that office; that these taels were not coin, but weight; that they were the currency or money in which all accounts were kept in Shanghai; that there were in China, besides the Shanghai tael, the Chefoo tael, the Tien Tsin tael, and various

other tacls; that these other tacls were also lumps of silver of different shapes, stamped or marked in a similar way to what the Shanghai tacls were; that they were not coin, but weight, and were, in the respective parts of China in which they had their origin, the currency or money in which all accounts were kept; that all these different tacls were regarded in China as having different values; that each of them was of less value than the haikwan tacl, or government tacl, in which duties at the custom-houses in China were estimated; that, in other words, it took the ordinary tacl and some fraction thereof to equal in value a government tacl; that the foreign value of all of these tacls fluctuated as the value of silver fluctuated in London, but their value in China did not fluctuate; the copper cash, or tsien, as it was called, having certain Chinese characters on it, and issued by the different provinces of China, was its only coin; that there were a great many different issues of copper cash, of many sizes and qualities; that the copper cash was one thousand parts of a tacl; that, like the Mexican silver dollar, it varied in value in China from time to time, the tacl being the only standard of value, and was bought and sold the same as merchandise.

Both sides having rested, the defendant's counsel moved the court to direct the jury to find a verdict in favor of the defendant on the following grounds: (1) That as the tacls in suit, as appears from the evidence therein, are not coin, but currency, no power by section 3564, Rev. St., or any other law of the United States, was given to the director of the mint to estimate, and to the secretary of the treasury to proclaim, their value; (2) that if the value of these tacls were a proper subject of estimation by the director of the mint, and of proclamation by the secretary of the treasury, the time of such estimation and proclamation was, by section 3564, Rev. St., for the year 1886, limited to the 1st day of January of that year, and any such estimation or proclamation made after the last-mentioned day was null and void and of no effect for any purpose during that year; (3) that as treasury circular No. 144, issued October 16, 1886, is the only thing in the case upon which the plaintiffs rely to establish the value of the tacls in suit, there is no evidence in the case to show that the value of these tacls, as taken by the defendant, as collector of customs, was not the true value thereof; and (4) that the plaintiffs have not proven facts sufficient to entitle them to recover. The plaintiffs' counsel also moved the court to direct a verdict for the plaintiffs.

*Edwin B. Smith* and *D. I. Mackie,* for plaintiffs.

*Edward Mitchell,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, Circuit Judge, (*orally.*) I shall follow the ruling which I made in the other case. *Gordon* v. *Hedden,* May 7, 1889.[1] It is not essential to a coin that it should bear the date of its issue, nor that it should bear the name or *insignia* of the sovereign, nor that it should be

---

[1] No opinion filed.

of any particular form, nor that its counterfeiting be made a crime by statute. In this case it appears that in China small masses of silver, not always uniform in size, nor regular in shape, but conforming generally to the design which the witness drew for us, are brought to an officer to be weighed and assayed. That officer is not directly an appointee of the government, but it seems to acquiesce in his discharging his functions. He is selected by a *consensus* of the leading members of financial and commercial houses, and it is his duty, after examining each mass, to inscribe on it a statement of its weight and fineness, predicated on the tael as a standard. Thus upon each separate mass (called "sycee") it is stated that it contains five taels and two-tenths, or three taels and one-seventh, or whatever may be the fact. These shoe-shaped pieces of silver, thus marked, circulate as the only money of account. They seem to be properly within the provisions of section 3564 of the Revised Statutes referred to, being of a substance intrinsically valuable, and as readily comparable with our standard as are the various gold and silver tokens of other countries. Such seems to have been the view taken at the mint, for the director has made the comparison and determination as to the Chinese tael, both in 1885 and 1886. There is no force in the contention of the defendant that a retrospective effect will be given to the proclamation of the secretary of the treasury if the plaintiffs' views are sustained. It appears in proof by the proclamation of October 16, 1886, that the director of the mint made the determination of value which he was required to do. When, as matter of fact, he made such determination is not stated in the proclamation, and does not appear in proof. The statute directed him to make such determination in January of 1886, and, in the absence of any proof to the contrary, it will be presumed that he performed his entire duty, and made the determination at the time when the statute directed him to. A verdict is directed for the plaintiffs for the full amount claimed.